# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2022

Lyle W. Cayce
Clerk

No. 21-50979

Therese Menzia, *parent of* Z.M.-D., *a minor child*,

*Plaintiff—Appellant*,

*versus*

Austin Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-991

Before Smith, Clement, and Haynes, *Circuit Judges*.
Edith Brown Clement, *Circuit Judge*:

Z.M.-D., a person of color and of mixed heritage, alleged that she was harassed by her peers on the basis of her race and national origin during her sixth-grade year in the Austin Independent School District. By her next friend and parent, Z.M.-D. sued the District for failure to address the reported harassment. The district court ultimately dismissed the suit.

For the reasons that follow, we AFFIRM.

# I

## A

Z.M.-D. immigrated to the United States from Cameroon when she was eight years old. She attended sixth grade at Martin Middle School in the Austin Independent School District (Austin ISD or District) from August 2017 to December 2017. During that time, eight students (Harassers) bullied her "on a daily basis" because of her race and national origin. The Harassers called her racial slurs and told her to "go back where [she] came from." The harassment included physical contact, like shoving. It got so bad that Z.M.-D. "did not want to go to school anymore."

On September 26, 2017, Z.M.-D. and her mother, Therese Menzia, reported these incidents and the names of the Harassers to David Lopez, Assistant Principal for the sixth grade. Lopez said that he would call the parents of the Harassers and then follow up with Menzia to ensure the bullying had stopped. Lopez neither spoke with any parents of the Harassers nor followed up with Menzia. But it is undisputed that he spoke with at least one of the Harassers about the harassment.

On October 13, Z.M.-D. told a teacher she "didn't want to . . . live anymore" because of the harassment. The teacher brought Z.M.-D. to Asha Creary, the school counselor, who performed a suicide assessment using the Columbia-Suicide Severity Rating Scale. Z.M.-D. did not test suicidal.[1]

---

[1] The magistrate judge found that Z.M.-D. tested as suicidal. This error likely derived from Creary's note that Z.M.-D.'s "responses were with a 7." Category 7 on the Columbia-Suicide Severity Rating Scale indicates suicidal behavior. *See* Mary E. Nilsson, M.E., et al., *Columbia-Suicide Severity Rating Scale Scoring & Data Analysis Guide* (Feb. 2013), https://cssrs.columbia.edu/wp-content/uploads/ScoringandDataAnalysisGuide-for-Clinical-Trials-1.pdf. But Creary's note referred to Z.M.-D.'s responses to the questions "[H]ow you've been feeling on a scale of 1 to 10" and "What's the lowest number you've felt in the past two weeks?"

Creary called Menzia to pick up Z.M.-D. While there, Menzia signed referrals allowing further counseling services. Menzia also talked to Lopez, who confessed he had not spoken with any parents of the Harassers because he had made one phone call and no one answered. But he said that he would open an investigation into the reported harassment.

Two school days later, Z.M.-D. assaulted one Harasser, purportedly in response to being called a "bitch." The parents of the Harasser wanted to press criminal charges. After investigating the physical altercation, campus resource officer, Tim Osio, arrested Z.M.-D. for assault. But Osio released Z.M.-D. to Menzia's custody. That day, Menzia followed up with Lopez about his investigation. Lopez said he had concluded, "[Z.M.-D.] is the bully." He said he had conducted the investigation, including multiple interviews with students and staff, on Friday, October 13. Menzia protested that she had not requested the investigation until after school let out that Friday. Lopez said that he had actually completed the investigation on Monday, October 16. But Menzia later discovered from a school police officer that Lopez could not have conducted the investigation on Monday "because he was [in] training the whole day." Lopez also told Principal Delagarza-Conness that he had been "unable to effectively investigate and provide appropriate discipline." Later that day, Lopez sent Menzia a report officially concluding his investigation and finding that "the negative interaction of the two students was mutual" and "the reported conduct does not constitute 'bullying' or 'harassment' as defined in law and District policy." Recognizing "Menzia's unhappiness with [ ] Lopez" and in an effort "to make Z.M.-D. and [ ] Menzia feel comfortable coming to administration with any issues," Delagarza-Conness reassigned Z.M.-D. to Brittany Showels, Assistant Principal for all seventh graders.

On October 18, Z.M.-D. and Menzia attended a removal conference to determine the appropriate discipline for the October 17 assault. Among

others, Creary, Showels, and Delagarza-Conness attended. Ultimately, Z.M.-D. received the lowest level of discipline under Austin ISD's mandatory policy for assaults: three days' suspension and removal to the District's Alternative Learning Center (ALC) for thirty days.

Before Z.M.-D. was removed to the ALC, she attempted to cut herself with a pair of scissors. She was admitted to Shoal Creek Hospital for psychiatric evaluation and treatment of depression and suicidal ideation. She remained for four days of inpatient treatment. Then, she stayed home from school for about three weeks. Meanwhile, Menzia appealed the District's decision to remove Z.M.-D. to the ALC. Menzia also requested Z.M.-D. be transferred. The District denied the transfer request but reversed its decision to remove Z.M.-D. to the ALC. The District also eventually removed the assault from Z.M.-D.'s disciplinary record.

Upon returning to school in early November, Z.M.-D. reported more incidents of harassment. On November 9, Z.M.-D. reported that Harassers called her racial slurs; on November 14, that Harassers touched her hair and told her that she smelled; on November 15, that a Harasser threw a ball at her face during school; and on November 17, that Harassers sprayed perfume in her face while telling her that she smelled.

On November 17, Menzia emailed Delagarza-Conness the names of the Harassers involved in the recent incidents. The same day, Z.M.-D. met with Delagarza-Conness, Lopez, Showels, and a school police officer. Austin ISD implemented a "Stay Away Agreement" between the Harassers and Z.M.-D., which directed both parties to avoid interacting during the school day and at all school events. Showels and the school police officer also opened an investigation into the allegations. However, Z.M.-D. refused to cooperate. Menzia had told Z.M.-D. not to cooperate because she did not believe the administrators would help. At Delagarza-Conness's request,

Menzia ultimately agreed to encourage Z.M.-D. to report harassment. No other incidents were reported.

On November 27, Menzia requested that Z.M.-D. be transferred to another school in the District. The request was granted and, in December, Z.M.-D. transferred to Kealing Middle School.

**B**

On October 11, 2019, Z.M.-D., by and through Menzia, sued Austin ISD, bringing claims under 42 U.S.C. § 1983 and Title VI of the Civil Rights Act of 1964. Menzia alleged that Austin ISD failed to train staff and address complaints of reported peer harassment based on race and national origin and, as a consequence, Z.M.-D. suffered damages.

Austin ISD moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion as to the § 1983 claim but denied it as to the Title VI claim. The District then moved for summary judgment on the Title VI claim. A magistrate judge recommended denying the motion, finding triable issues of fact as to whether the District was deliberately indifferent. Austin ISD objected to this finding and conclusion. The district court agreed with Austin ISD, finding that the District was not deliberately indifferent as a matter of law because it "took some action in response to all of the incidents noted by Plaintiffs, including meeting with Plaintiffs, attempting to contact the parents of the other students reported by Plaintiffs, conducting an investigation and filing a report, offering Plaintiffs counseling services, and ultimately replacing the administrator in charge of Plaintiffs' claims on October 17, 2017, following a physical altercation between the victim and another student." The court granted the motion for summary judgment and dismissed the Title VI claim. The court denied

reconsideration under Rule 59(e). Menzia timely appealed the grant of summary judgment and dismissal of the Title VI claim.[2]

## II

We review the grant of summary judgment *de novo*. *See Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 989 (5th Cir. 2014). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On summary judgment, we "view[] all evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Estate of Lance*, 743 F.3d at 989 (quoting *Pierce v. Dep't of the U.S. Air Force*, 512 F.3d 184, 186 (5th Cir. 2007)).

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A school district is liable for student-on-student harassment if it "deci[des] to remain idle in the face of known student-on-student harassment in its schools." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 641 (1999). To prevail on a Title VI claim, a student must establish: (1) the harassment was "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school"; (2) the district had actual knowledge of the harassment; (3) the district had "control over the harasser and the environment in which the harassment occurs"; and (4) the district was deliberately indifferent. *Fennell*

---

[2] Menzia has abandoned her appeal of the denial of reconsideration.

*v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408–09 (5th Cir. 2015) (quoting *Davis*, 526 U.S. at 644, 650).

## III

## A

At the threshold, Menzia argues that the district court applied the wrong legal standard under Title VI. The district court found that Austin ISD was not deliberately indifferent as a matter of law because it "took some action in response to all of the incidents." Menzia argues that this "some action" standard fails to consider the reasonableness of the responses in light of the severity of the harassment reported. We agree.

The deliberate-indifference standard under Title VI derives from the Supreme Court's opinion in *Davis v. Monroe County Board of Education*, a Title IX case alleging sex-based peer harassment. *See* 526 U.S. 629 (1999); *Fennell*, 804 F.3d at 408 (extending *Davis* to Title VI claims). The *Davis* Court held that a school district is liable for peer harassment "only where [it is] deliberately indifferent to . . . harassment." 526 U.S. at 650. And a school district is deliberately indifferent when its "response to the harassment or lack thereof is clearly unreasonable *in light of the known circumstances*." *Id.* at 648 (emphasis added). Accordingly, we require a school district do more than simply respond to harassment, it must "respond[] *reasonably* to a risk of harm." *Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 384 (5th Cir. 2000) (emphasis added). And "what constitutes appropriate remedial action . . . will necessarily depend on the particular facts of the case." *Id.*; *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 (5th Cir. 2020) ("[I]f the recipient responds reasonably to a risk of harm, it will not be liable[.]"); *cf. Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1263 (11th Cir. 2010) ("The [ ] inquiry is contextual: it does not require school districts to simply do *something* in response to [ ] harassment; rather, they must respond in a

manner that is not 'clearly unreasonable in light of the *known* circumstances.'" (quoting *Davis*, 526 U.S. at 648)).

*Fennell* provides an illustration. There, we held that a school district was not deliberately indifferent to students' allegations of race-based peer harassment where the district "took some action in response to almost all of the incidents[.]" *Fennell*, 804 F.3d at 410. But, in holding that the responses were not unreasonable as a matter of law, we did not conclude that the simple fact of action alone was sufficient. We noted the use of "relatively strong action to address the most egregious incidents" and of "relatively mild" action in response to the less severe allegations. *Id.* at 410–11. "*Taken together*, [the] relatively weak responses to harassment [were] concerning" but not clearly unreasonable in light of the overall response. *Id.* at 411 (emphasis added). *Fennell* instructs an evaluation of the reasonableness of a district's responses in light of the severity of the harassment.

Although the opinion below failed to consider the reasonableness of Austin ISD's responses against the severity of the reported harassment, the court ultimately reached the correct result as discussed in the next Section.

**B**

The district court found that Austin ISD took the following responses to the reported harassment: "[1] meeting with Plaintiffs, [2] attempting to contact the parents of the other students reported by Plaintiffs, [3] conducting an investigation and filing a report, [4] offering Plaintiffs counseling services, and [5] ultimately replacing the administrator in charge of Plaintiffs' claims[.]" Menzia contends that the district court improperly resolved factual disputes and relied on District actions not properly considered remedial responses under Title VI. We tend to agree. But the record establishes that Austin ISD took additional responsive actions not addressed by the district court, namely: [6] an informal reprimand of one of

the Harassers, [7] an investigation into the October 17 assault, [8] an investigation into the November incidents of harassment, and [9] a Stay Away Order executed between the Harassers and Z.M.-D. Viewed in the totality, these additional responses establish that the District was not deliberately indifferent as a matter of law. We consider the disputed responses and the undisputed responses in turn.

## 1

The district court improperly credited that Lopez conducted an investigation. Lopez said that he completed his investigation, replete with multiple interviews, on either Friday, October 13, or Monday, October 16. But the record supports a genuine dispute of material fact whether Lopez could have conducted an investigation on either day. Lopez also told Delagarza-Conness that "he was unable to effectively investigate" the harassment. At this stage, Menzia is entitled to the inference that Lopez did not conduct an investigation.

The district court also found that Lopez took remedial action by calling the parent of a Harasser. Assuming that Lopez did call, which is not clear in the record, he did not reach a parent, leave a voicemail, or call again. While remedial actions that later prove ineffective are not clearly unreasonable responses, a remedial response that a school district knows at the time of action is ineffective is clearly unreasonable. *See Estate of Lance*, 743 F.3d at 1000 (noting "knowingly ineffective interventions" support deliberate indifference); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) ("Where a school district has actual knowledge that its remedial action is inadequate and ineffective," and it does nothing, "such district has failed to act reasonably in light of the known circumstances"); *Sch. Bd. of Broward Cnty.*, 604 F.3d at 1260–61 (agreeing with *Vance*).

Lopez's attempted call to a parent does not support that Austin ISD was not deliberately indifferent as a matter of law.

In addition, the district court concluded that Austin ISD's meetings with Menzia and Z.M.-D. constituted a remedial action under Title VI. However, we agree with Menzia that a school district's meeting with a Title VI complainant does not constitute responsive remedial action. While listening to a student's report of a racially hostile environment is the first step in taking measures to address it, such a meeting is not itself a "remedial action," *Dall. Indep. Sch. Dist.*, 220 F.3d at 384, because it is not a "response to the harassment," *Davis*, 526 U.S. at 648. Similarly, we reject the district court's conclusion that the reassignment of Z.M.-D. to Showels was responsive to the reported harassment. Delagarza-Conness testified that this transfer was done "to make Z.M.-D. and Ms. Menzia feel comfortable coming to administration with any issues." This brings us full circle. A school district's meeting with a Title VI complainant to listen to reports of racial harassment, and its efforts to encourage complainants to make reports, are not remedial actions responsive to reported harassment under Title VI.

However, we agree with the district court's conclusion that the provision of counseling was a remedial action responsive to the harassment. We recognize Menzia's point that "the mere act of listening to students is not a remedy in and of itself," *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 690 (4th Cir. 2018), but the record does not support that Z.M.-D. only received listening services. Counseling generally consists of both listening *and* guidance. *See Counseling*, Cambridge Dictionary (2022); *see also Hurley*, 911 F.3d at 693 (suggesting the benefit of counseling to complainants). Depending on the severity of the harassment, a school district's offer of counseling and nothing more may prove a clearly unreasonable response. *E.g.*, *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1313–14 (10th Cir. 2020) ("The District commendably provided

counseling . . . . But it is not enough to try to help a student cope with the misbehavior of other students."). But that is the case with any remedial response taken by a school district. Here, counseling was just one of a number of actions taken by Austin ISD in response to the escalating circumstances of peer harassment.

**2**

The record establishes that, in addition to providing Z.M.-D. counseling services, Austin ISD issued an informal reprimand to one of the Harassers, investigated the October 17 assault, investigated the reported incidents in November, and executed a Stay Away Order between the Harassers and Z.M.-D.[3] These responses, viewed in the totality and in light of the severity of the harassment, establish that Austin ISD was not deliberately indifferent as a matter of law.

A complete failure to act is an obvious case of deliberate indifference. *See Sewell*, 974 F.3d at 586; *Fennell*, 804 F.3d at 411. And, depending on the severity of the harassment, a school district may be deliberately indifferent where it "failed to take additional reasonable measures after it learned that its initial remedies were ineffective." *Porto v. Town of Tewksbury*, 488 F.3d 67, 74 (1st Cir. 2007); *see also Vance*, 231 F.3d at 262 (noting deliberate indifference where school district "continued to use the same ineffective methods to no acknowledged avail"). The facts of this case do not fall into

---

[3] The District argues that we should also consider removal of the assault charge, reversal of the decision to send Z.M.-D. to the ALC, and grant of the transfer request. We disagree that these actions support that the District was not deliberately indifferent. At worst, the revocation of discipline suggests an error in assigning fault and, at best, is akin to inaction. The grant of a transfer request is not, under these facts, a reasonable remedial response to harassment because it "further deprive[s] [the student] of [ ] educational opportunities." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 707 (4th Cir. 2007) (Gregory, J., concurring); *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003).

either category. It is undisputed that Austin ISD responded to the reported harassment. And it is undisputed that the District took additional, reasonable measures after its first approaches were ineffective.

Austin ISD first tried informal discipline—talking to one Harasser about the reported conduct—coupled with offering counseling services to Z.M.-D. When the circumstances of harassment escalated with the October 17 assault, a District police officer conducted an investigation. When the circumstances escalated with Z.M.-D.'s temporary hospitalization and the harassment continued upon her return to school, the District executed a Stay Away Agreement and, in addition, opened an investigation into the incidents reported. That the investigation does not appear to have been completed is not unreasonable because Menzia instructed Z.M.-D. not to speak with District administrators, thus impeding the investigation. Had Menzia and Z.M.-D. cooperated, the District may have taken additional remedial action. Significantly, Austin ISD's responses strengthened as the reported harassment escalated: from informal talks, to counseling, to investigations, to a Stay Away Agreement. The "mild punishments" chosen in the beginning must be evaluated alongside the "relatively strong action" in the end. *Fennell*, 804 F.3d at 410–11.

The District responses are similar to actions we held sufficient to establish that a school district was not deliberately indifferent in *Sanches v. Carrollton-Farmers Branch Independent School District*, 647 F.3d 156 (5th Cir. 2011). In *Sanches*, a school district responded to allegations of sex-based harassment under Title IX by "[taking] statements after each reported event, [speaking] to [the offender] about her conduct, and remov[ing] [the offender] from her sixth-period class and cheerleading tryouts." *Id.* at 168. We held that those responses "were not clearly unreasonable merely because the actions continued" or because the student desired different disciplinary action. *Id.* Rather, "[i]neffective responses . . . are not necessarily clearly

unreasonable," and "[s]chools are not required to remedy the harassment or accede to a parent's remedial demands." *Id.* at 167–68. So too here.

Certainly, school districts have responded to reports of harassment with more robust, immediate actions. *See, e.g.*, *Fennell*, 804 F.3d at 410 (school district offered accommodations and suspended harasser); *Estate of Lance*, 743 F.3d at 997–1000 (school district adopted "pattern of active responses . . . to incidents"). But the deliberate-indifference standard "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." *Davis*, 526 U.S. at 648. A showing of deliberate indifference is a "tall hurdle," *Sewell*, 974 F.3d at 586, because a school district cannot be liable unless it "consciously avoids confronting harassment," or responds with "pretextual or knowingly ineffective interventions," *Estate of Lance*, 743 F.3d at 1000; *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) (noting deliberate indifference is an "official decision" not to remedy misconduct). We are mindful that "[j]udges make poor vice principals." *Estate of Lance*, 743 F.3d at 996. So long as a school district's response is not "clearly unreasonable in light of the known circumstances," we "refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648.

Austin ISD's responses, "[t]aken together" and in light of the reported harassment, do not, as a matter of law, rise to deliberate indifference. *Fennell*, 804 F.3d at 411. The district court correctly granted summary judgment to Austin ISD on the Title VI claim. Accordingly, the remaining arguments raised by the District with respect to record citations and a racially hostile environment are moot.

\* \* \* \*

We AFFIRM.