# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2022

Lyle W. Cayce
Clerk

No. 21-50966

Camron Sneed,

*Plaintiff—Appellant*,

*versus*

Austin Independent School District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-608

Before Clement, Duncan, and Wilson, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

Camron Sneed sued her school district under Title VI of the Civil Rights Act of 1964, alleging racial discrimination by other students. After a bench trial, the district court ruled for the school district. We affirm.

I.

Camron Sneed, a black teenager, attended James Bowie High School ("Bowie") in the Austin Independent School District ("District") from fall 2016 until her graduation in spring 2020. She was an accomplished student and was involved, among other activities, in the Bowie band and Future

No. 21-50966

Farmers of America ("FFA"). In June 2019, Sneed's parents, Charles Sneed and Pamela Parks, sued the District on her behalf under 42 U.S.C. § 1983 and 42 U.S.C. § 2000d ("Title VI"), alleging that Sneed suffered racial discrimination by other students and that the District had been deliberately indifferent to it. After turning eighteen, Sneed became the sole plaintiff in April 2020.

The District moved to dismiss Sneed's § 1983 claim, and then—following discovery—moved for summary judgment on both the § 1983 and Title VI claims. All motions were referred to a magistrate judge. On August 31, 2020, the magistrate judge issued a report and recommendation ordering dismissal of the § 1983 claim. Sneed did not object, and the district court subsequently dismissed the § 1983 claim. On September 11, 2020, the magistrate judge issued a report and recommendation ordering the District's summary judgment motion be granted in part and denied in part. The magistrate judge recommended the Title VI claim be dismissed so far as it was predicated on the District's failure to adequately train its employees, to offer Sneed counseling services, or to comply with its internal Title VI policies. The magistrate judge further recommended dismissing the Title VI claim to the extent it was based on twelve particular incidents, finding these failed to show the District's deliberate indifference whether considered "singularly or taken together." But the magistrate judge recommended denying the District's motion as to three incidents, finding these raised a genuine dispute about whether the District was deliberately indifferent.

The magistrate judge's report notified the parties that they had fourteen days to file objections. The District filed objections but Sneed filed none. The district court overruled the District's objections and adopted the magistrate judge's report and recommendation in full. The parties then agreed to submit to a bench trial on Sneed's Title VI claim. A bench trial was held on December 7–9, 2020, addressing only the three incidents that had

survived the District's summary judgment motion. Those incidents warrant a more detailed description.

*The "Sass-quatch" Award.* The Bowie band hosts an awards banquet at the end of each school year. The students themselves create and present some of the awards, which are typically intended to be funny. At the April 29, 2017, banquet following the end of Sneed's freshman year, her bandmates presented her with the "Sass-quatch" award, which included a trophy and a certificate. The certificate read: "For being one of the absolute sassiest members of the Front Ensemble. There is no denying your impressive ability to make any other member of the [Front Ensemble] either jealous or enraged at your ability to make split-second savage remarks. Great job, what a [feat]." While Sneed found this award offensive, the district court determined at trial that neither Sneed nor her parents reported their concerns to the school until filing their complaint.

*Use of Racial Slurs by FFA Students.* At trial, the district court found three instances when Sneed or her parents reported that a fellow FFA student used a racial slur. The first occurred during Sneed's freshman year on December 14, 2016, at an FFA event called "pig church," where students show pigs in a mock auction. During the auction, Sneed's mother, Pamela Parks, overheard students outside using vulgar language, including racial slurs. When Parks confronted the students, they called her a "bitch," after which Parks took Sneed out of pig church and left. The district court found that neither Sneed nor her teacher overheard the students' comments.

The next morning, Parks emailed Bowie's interim principal about the incident. The interim principal met with Parks that same day and assigned an assistant principal to investigate the incident. The assistant principal reported interviewing FFA students and imposing discipline. A few days later, on December 19, the interim principal and the investigating assistant

principal met with the FFA alumni board. At the meeting, Parks was given the opportunity to speak about the incident, and attendees reviewed the school's disciplinary procedures and were encouraged to report misconduct to the school.

The second use of racial slurs by fellow students occurred during Sneed's sophomore year on December 7, 2017, while she and other FFA students were in the classroom of Amber Dickinson, an FFA advisor. A special-education student approached Sneed and referred to one of their Asian-American classmates as a "noodle nigger." Sneed relayed this comment to Parks, who reported it to Bowie's new principal. The principal assigned an assistant principal to investigate, who, after interviewing Sneed and other students, confirmed that the student in question had used the slur. The school then held a meeting with the student, his parents, and Dickinson and made it clear that he would be removed from the FFA program if his misbehavior continued.

The third use of racial slurs also occurred in Dickinson's classroom later that same school year on May 18, 2018. Parks emailed the principal and reported that Sneed had overheard unknown students using racial slurs in Dickinson's classroom during the lunch period; Sneed's father also called the principal and relayed the same incident. The principal immediately assigned an assistant principal to investigate, who then interviewed the five students in Dickinson's room at the time, all of whom denied hearing slurs used. The investigating assistant principal also spoke with Dickinson and confirmed that her office door had been closed and she did not hear any inappropriate language. After the incident, Dickinson forbade the use of her classroom before school, after school, or during lunch except when she was there to monitor it.

*Graffiti Containing Racial Slurs.* The third and final incident that survived summary judgment and proceeded to trial involved the presence of racist graffiti (specifically, graffiti containing the word "nigger") in a school restroom and on the door to the barn used by FFA. Sneed asserted that during her time at Bowie she saw graffiti containing that epithet in two different locations, though she did not know who had written it. She spotted the barn graffiti her freshman year and the restroom graffiti either her sophomore or junior year; she did not report either to the school. Bowie has a policy of removing all graffiti, but neither teachers nor administrators saw or received reports of these incidents of graffiti.

Following the bench trial on these three incidents, the district court issued its findings of fact and conclusions of law and found in favor of the District. Specifically, the court found the District was not deliberately indifferent as to the "Sass-quatch" award because the District lacked actual knowledge of Sneed's concerns and therefore had no duty under Title VI. As for the three reported uses of racial slurs by FFA students, the court determined the District was not deliberately indifferent because Sneed herself did not hear the slur used at the pig church incident; the court had previously dismissed the "noodle nigger" incident; and the school responded appropriately to the 2018 lunch period slurs. Finally, the court determined the District was not deliberately indifferent to the graffiti because, even assuming that the graffiti by itself was actionable under Title VI, the District did not have actual knowledge of it.

The district court entered judgment for the District on July 28, 2021. Sneed then moved for reconsideration under Federal Rule of Civil Procedure 59(e), which the district court denied. This appeal followed.

## II.

We review a district court's findings of fact at a bench trial for clear error and its conclusions of law *de novo*. *Hess Corp. v. Schlumberger Tech. Corp.*, 26 F.4th 229, 232–33 (5th Cir. 2022); *see* FED. R. CIV. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous."). A fact finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Guzman v. Hacienda Recs. & Recording Studio, Inc.*, 808 F.3d 1031, 1036 (5th Cir. 2015) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). Fact findings after a bench trial are accorded significant deference. *Hess*, 26 F.4th at 233. If the evidence can be viewed in two different ways, then the factfinder's view cannot be clearly erroneous. *Anderson*, 470 U.S. at 574.

## III.

On appeal, Sneed argues the district court committed three reversible legal errors in finding the District was not deliberately indifferent. For the following reasons, we disagree and affirm the district court's judgment.

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. When a plaintiff's Title VI claim is premised on student-on-student harassment, the plaintiff must show that "(1) the harassment was 'so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to educational opportunities or benefits provided by the school' (a racially hostile environment), and the district (2) had actual knowledge, (3) had 'control over the harasser and the environment in which the harassment occur[red],' and (4) was deliberately

indifferent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015) (quoting *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 644, 650 (1999)).

The actual knowledge and deliberate indifference prongs are particularly relevant to our analysis here. A funding recipient can be deliberately indifferent only when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Fennell*, 804 F.3d at 410 (quoting *Davis*, 526 U.S. at 648). This is a demanding standard. *Ibid.* The proper inquiry is whether, taken in context, the recipient responded reasonably to the harassment given its knowledge and the severity of harassment reported. *Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 361 (5th Cir. 2022). A reasonable response need not involve rooting out harassment or taking the most effective remedial steps available. It requires only that the recipient take some action that is not "pretextual or knowingly ineffective." *Id.* at 364 (quoting *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 1000 (5th Cir. 2014)). The court must "refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* (quoting *Davis*, 526 U.S. at 648).

## A.

Not all of Sneed's arguments are properly before us. She contends the district court did not give proper weight to her allegations that the District was deliberately indifferent because it failed to follow its own policies. But Sneed forfeited this argument by failing to object to the magistrate judge's recommendation; and before us, she fails to argue plain error.

The magistrate judge recommended granting the District summary judgment "so far as Plaintiff attempts to couch her Title VI claim on [the District's] alleged failure to comply with its own policies and regulations[.]" Sneed did not object to this recommendation, which the district court

adopted. Accordingly, the most Sneed could argue on appeal is that the district court committed plain error in adopting this conclusion. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1422–23 (5th Cir. 1996) (en banc). But Sneed does not even raise the possibility of plain error. Nowhere in her briefing, much less the portion devoted to the District's policies, does she argue that the district court committed plain error. This argument is therefore forfeited in its entirety. *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 708 n.9 (5th Cir. 2020) ("An argument not briefed on appeal is waived.").[1]

## B.

Next, Sneed argues the district court erred by analyzing each incident of harassment individually rather than assessing whether the District was deliberately indifferent under the totality of the circumstances. We disagree. The district court applied the correct legal standard to the three incidents properly before it. In particular, the court duly applied *Fennell v. Marion Independent School District*, 804 F.3d 398 (5th Cir. 2015), this circuit's seminal case on Title VI claims for student-on-student harassment.

*Fennell* teaches that whether a defendant's response to harassment is reasonable is a contextual inquiry made in light of the severity of the harassment at issue. *See Menzia*, 47 F.4th at 361 ("*Fennell* instructs an evaluation of the reasonableness of a district's responses in light of the severity of the harassment."); *id.* at 363 ("These responses, *viewed in the totality and in light of the severity of the harassment*, establish that [defendant] was not deliberately indifferent as a matter of law.") (emphasis added).

---

[1] For the same reason, Sneed has forfeited any argument as to the district court's dismissal of her § 1983 claim and its denial of her motion for reconsideration, neither of which were briefed on appeal. Sneed concedes she has forfeited review of her § 1983 claim.

No. 21-50966

Sneed fails to show any error in the district court's application of *Fennell*. The court found the District was not deliberately indifferent as to *any* incident individually, and so it follows that the District could not have been deliberately indifferent when viewing the incidents (and the District's responses to them) in the aggregate. This was not a case where the defendant adequately responded to some incidents and inadequately to others, leading the court to evaluate everything as a whole. *Id.* at 361–64 (conducting an aggregate analysis because of the defendant's robust responses to some incidents and weak responses to others). We see no error by the district court in this regard.

## C.

Third and finally, Sneed argues that the district court erred in finding that the District's responses to the incidents involving Sneed's harassment were reasonable and adequate. Specifically, Sneed argues the District did little more than verbally reprimand students when more robust forms of discipline for students and training for staff were warranted. Notably, however, Sneed does not argue that the district court erred as to any particular incident. Instead, she vaguely implies that more should have been done in general. Sneed therefore fails to show any error. As the district court's findings show, the District either lacked actual knowledge or responded proportionately to each incident.

As discussed, a Title VI defendant is not deliberately indifferent where it actively responds to harassment, provided that its response is not pretextual or knowingly ineffective. *Id.* at 364. An adequate response need not put an end to harassment, nor be the most effective measure available. Administrators are entitled to make these decisions without second-guessing from courts. *Id.* To show error, Sneed must demonstrate that the District's

No. 21-50966

responses were "clearly unreasonable in light of the known circumstances." *Fennell*, 804 F.3d at 410 (quoting *Davis*, 526 U.S. at 648).

Sneed has not done so. She fails to explain why any of the District's particular responses were deficient. Nevertheless, we briefly review the court's findings as to the three incidents to show why the court did not commit error, much less clear error.

*The "Sass-quatch" Incident*. We see no error in the district court's finding that the District lacked actual knowledge of this incident and therefore could not have been deliberately indifferent to it. While Sneed was offended by the award, she testified that she never reported the incident to any school administrator. Parks testified that she never submitted a written complaint and that she merely mentioned it verbally to two administrators the following school year. But both administrators denied any knowledge of the incident. As a result, the district court found that the District lacked actual knowledge. Determinations of credibility are accorded great deference, and we see no reason to disturb the court's conclusion. *See Hess*, 26 F.4th at 233.

*The FFA Slur Incidents.* The court did not err in its determination that the District was not deliberately indifferent as to the three times that Sneed or Parks reported the use of racial slurs by FFA members. To begin with, the court correctly observed that the December 2017 incident involving a special education student's use of a racial slur had already been dismissed at the summary judgment stage.

Furthermore, the court found the District's responses to the December 2016 pig church incident and May 2018 lunch period incident were reasonable and therefore not deliberately indifferent. Following the pig church incident, Bowie's principal met with Parks the same day she lodged her complaint. The school conducted an investigation, disciplined students,

and addressed the issue a few days later at a meeting with the FFA alumni board. No evidence shows that response was either pretextual or knowingly ineffective. Likewise, following the lunch period incident in Dickinson's classroom, an assistant principal promptly interviewed all the students and Dickinson changed her classroom policy to require supervision of students at all times. No evidence shows this was not a reasonable response under the circumstances.

*The Graffiti Incidents.* The district court did not err in finding that the District lacked actual knowledge as to the two incidents of racist graffiti. The court found that Sneed never reported either instance to an administrator and that the administrators never learned of the graffiti. This determination is supported by the record: Sneed testified that she never made a formal complaint or otherwise reported it to an administrator. Without actual knowledge, the District could not have been deliberately indifferent.

We therefore find no error, much less clear error, in the court's findings that the District was not deliberately indifferent with respect to any of these incidents, whether considered singularly or collectively.

## IV.

The district court's judgment is AFFIRMED.

11